```
 1            IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

 2                        FOURTH JUDICIAL DISTRICT

 3   STATE OF ALASKA,        )
                             )
 4          Plaintiff,       )
                             )
 5       vs.                 )
                             )
 6   DANIEL CARSON LEWIS,    )
                             )
 7          Defendant.       )
     _____)
 8   Case No. 4FA-S01-3111 CR

 9
                        TRANSCRIPT OF SENTENCING
10
                  BEFORE THE HONORABLE JANE KAUVAR
11                       Superior Court Judge

12                                         Fairbanks, Alaska
                                           June 6, 2003
13

14   APPEARANCES:

15     FOR THE PLAINTIFF:            KEVIN F. BURKE
                                     Assistant Attorney General
16                                   310 K Street, Suite 308
                                     Anchorage, Alaska  99501
17
       FOR THE DEFENDANT:            JENNIFER HITE
18                                   Assistant Public Defender
                                     529 Fifth Avenue, Suite 1
19                                   Fairbanks, Alaska  99701

20
       ALSO PRESENT:                 DEPARTMENT OF CORRECTIONS
21                                   (Not identified on record)

22

23

24

25                         ORIGINAL            Exhibit  C
                                               Page  1  of  12
```

Gaylene's Word Services
(907) 338-3936

1  been contacting -- Daniel Lewis would've been contacting the
2  troopers to turn in Randy.
3          And the fact that at the time his initial statements
4  were "I wasn't even there, I don't know what you're talking
5  about, I had nothing to do with it" were probably his first
6  instinct of how he could get out of this, by pretending that
7  he hadn't even been there.  And only when that didn't work did
8  he decide to do the -- well, I'll-say-it-was-my-brother
9  approach.  So I take then from (indiscernible) Lewis's point
10 that it was only later after he'd been in custody a while that
11 he came to this conclusion that he should blame it on Randy as
12 nothing more than that.  So I think that the evidence was
13 overwhelming and the sentence needs to reflect that.
14         I'm also, just for the record, going to make a
15 couple of statements.  This was done October 4th of the year
16 2001, and for whenever this gets on appeal, lest people forget
17 that it was September 11th of 2001 in which this country was
18 put in a great deal of fear that things like this might
19 happen, the fact that Mr. Lewis was not a terrorist when he
20 did this and didn't do it for terrorist purposes wasn't
21 immediately known.  And when you talk about the fear that was
22 put into people, I think that one has to consider that
23 Mr. Lewis's timing added to a great deal of fear of people
24 throughout the country, and that there is no way that
25 Mr. Lewis would not have known on October 4th that the country

Exhibit __C__
Page __2__ of __12__

1  was still reeling from the prior act of vandalism to this
2  country, and that the fact that, you know, his shooting at the
3  pipeline succeeded on this date versus some other date was
4  probably just unfortunate to him.  Maybe had he succeeded in
5  getting a hole in the pipeline before September 11th, there
6  wouldn't have been so much of a to-do made about it.  But the
7  fact of the matter was Mr. Lewis, because he committed this
8  after, I think, added to it.
9           I think Mr. Lewis, as I've already said, he shot at
10 this pipeline because he knew this was the pipeline that would
11 get the most attention.  He had picked other things to
12 vandalize before.  He'd picked safes to vandalize before, he'd
13 picked vehicles to vandalize before.  I mean, vandalizing
14 things wasn't new to Mr. Lewis; committing offenses wasn't new
15 to Mr. Lewis.  Mr. Lewis shot at this particular pipeline with
16 this big of a gun, he did it because that would make the most
17 attention on himself.  And now I think he needs to suffer the
18 consequences because, as serious offenses go, this is right up
19 there at the top of criminal mischief in seriousness, and I
20 don't think anybody could argue with that.  I don't think you
21 could find too much more of a serious criminal mischief than
22 this one was.  In considering the *Chaney* criteria, seriousness
23 is right up there at the top, and I find that this was
24 certainly an aggravated criminal mischief.
25           As far as the other factors of being able to deter

Exhibit C
Page 3 of 12
Gaylene's Word Services
(907) 338-3936
42

1  Mr. Lewis and deter others, hopefully this sentence will deter
2  other people from taking potshots at it; that people who used
3  to think maybe it's fun to try and just shoot a hole in a
4  pipeline, thinking they probably wouldn't really succeed but
5  it might be fun to try, those people hopefully will be
6  deterred when they realize that if they happen to succeed, the
7  sentence is going to be very long and very harsh in that
8  sense, that it will not be treated as just some little
9  misdemeanor criminal mischief that nobody pays too much
10 attention to.  So hopefully it will deter others.
11         I do not believe that anything short of isolation
12 will in fact deter Mr. Lewis.  And it's at the point where the
13 reaffirming societal norms that people who repeatedly commit
14 criminal offenses will in fact be kept out of the mainstream
15 of the public is something that the Court needs to consider at
16 this time.  I mean, the reality is that if Mr. Lewis had been
17 committing his offenses in California, he would've been locked
18 up for life long before he ever got to being able to commit a
19 13th felony.  Alaska has been very generous to Mr. Lewis, and,
20 unfortunately, I think Alaska's generosity in the sentencing
21 of Mr. Lewis up till this point in time has not deterred him.
22 And in his own mind, I don't think it has really reaffirmed
23 the societal norm that we expect people to be law abiding,
24 because he commits offense after offense, and he still is out
25 to commit more.  The fact of the matter is he committed a DWI



Exhibit C
Page 4 of 12

Gaylene's Word Services

1  they've been dealt with by another judge.  If Mr. Lewis is
2  given an opportunity to get out, Mr. Lewis uses the
3  opportunity to commit further offenses.  I agree that
4  Mr. Burke is correct that the burden upon the court system now
5  is to in fact isolate Mr. Lewis so that for whatever period he
6  is in custody, the next offense is postponed.  And I think
7  that in fact, unfortunately, that is all that we can
8  accomplish at this point.
9          He's not a youthful offender anymore.  I cannot have
10 some hope that suddenly this is going to change.  To say that
11 he suddenly has support that he didn't previously have, that
12 isn't even true either.  He previously has had a spouse at one
13 time.  He previously has had other people in his life.
14 Obviously, he has a two-year-old child:  there was some other
15 woman in his life two years ago who was obviously trying to be
16 supportive of Danny.  I mean, she was willing to be with him
17 long enough to have a child by him, so they can't say there's
18 been nobody providing support to Danny prior to this.  And so
19 to suddenly say there is some change now, unfortunately, I
20 don't think that that's correct.
21         I would like to state for the record, and I'd like
22 to state it because I think that the letter written by
23 Ms. Logan was an extremely thoughtful, well-written letter,
24 and I appreciate the time that she took to write it and the
25 sentiments that she expressed.  I think it was very

Exhibit C
Page 5 of 12

*Gaylene's Word Services*
*(907) 338-3936*

45

1  thoughtful.  Unfortunately, Ms. Logan is facing her own
2  demons.  And so if you say, well, a problem of Danny's is that
3  he's previously been released back to the family that has an
4  alcohol problem, unfortunately, releasing Danny to Ms. Logan
5  isn't any different.  She too has an alcohol problem that
6  she's working on.  So I'm not faulting her for having that.
7  I'm simply saying that if the statement is, "Well, if we had
8  just released Danny before to someone other than his family
9  and now he has somebody he can be released to that is going to
10 somehow change the fact that he keeps going back and
11 drinking," I'm not even sure if I can make that finding at
12 this point.  So I can't say that, well, all of a sudden after
13 this offense Danny will have changed and it'll be safe to put
14 him back into the community because I don't believe that's
15 correct.
16         So as far as the *Muechler (ph)* finding, the sentence
17 exceeds the 10-year maximum for the most serious, I need to
18 say why.  I think the reason why is because I think that the
19 world deserves to be protected from Mr. Lewis for longer than
20 the 10-year period because I do not believe that he will be
21 safe to be released in a 10-year period.  I think that the
22 indication of anybody who the most he spends out of jail is 38
23 days and in a 34-day period he manages to commit five new
24 felonies is a pretty good indication that Mr. Lewis is only
25 safe to the public when in fact he is not out.

```
 1  future consideration.
 2            So the Court, in giving the sentence, is making a
 3  finding that I recognize it's beyond the 10 years, but I
 4  believe that it is necessary under the circumstances.
 5  However, I'm not going to give the exact sentence as
 6  recommended by the state because I believe some of the
 7  things -- more things merge than what the state would say.
 8            As to Count I, the criminal mischief, I am going to
 9  impose the recommended sentence, 10 years with two years
10  suspended.  While the presumptive is six years, because I've
11  said this is an extremely aggravated criminal mischief both
12  for the actual seriousness and for the number of prior
13  felonies, so if you put together both of those, either of
14  which would support more than the presumptive sentence, I
15  think simply aggravating it by two years is not untoward.
16            As to the assault, however, I am going to impose
17  five years with two years suspended.  I believe the three-year
18  presumptive is an appropriate sentence for that particular
19  assault.
20            And as to the Count III, I'm going to impose the
21  presumptive sentence, five years with two suspended, because I
22  am going to, when I finish that, revoke the 480 days so that
23  essentially by imposing that time, that's over a year
24  additional.  I don't think he needs to do essentially the
25  extra -- tack on to the presumptive and then also revoke all
```

1  the time, and I believe that the time should be revoked for
2  the other offenses.
3       So those, however, I find all run consecutive to
4  each other, that they area different societal interests and
5  they were committed in fact at different periods of time,
6  whether it was a minute apart or hours apart, it was not the
7  same conduct.
8       However, when we get to the oil pollution, the oil
9  pollution is aggravated because of the amount, but that's what
10 made me aggravate the criminal mischief, so it seems a little
11 unfair to use the amount of oil that came out as the
12 aggravator for the criminal mischief, then aggravate the oil
13 pollution to the maximum and have it all run consecutive
14 because it is the same fact that there was so much oil that
15 was -- came out that made the criminal mischief so bad.  So
16 while I'm going to impose the 360 days because certainly I
17 can't make a finding that this isn't an aggravated oil
18 pollution, I am going to run 180 days of it concurrent with
19 the sentence in the in criminal mischief.  So I do think it's
20 separate.  He could've actually been convicted of criminal
21 mischief without even having all this oil spill, but I don't
22 think that it's fair to impose the full amount as a
23 consecutive sentence when that is one of the factors that led
24 me to aggravate the criminal mischief.
25       As to the misconduct involving weapons, again, the

1  fact of the matter is it was the fact that he was not supposed
2  to have a weapon, he was intoxicated when he had the weapon,
3  it was inappropriate for him to even touch a weapon, he knew
4  he wasn't allowed to have a weapon.  Had Mr. Lewis tried to
5  follow any of the rules that a judge had set down before such
6  as "Now that you're a felon, you don't have weapons," he
7  couldn't have committed this offense.  I'm going to impose
8  again the 360 days flat time, but, again, in consideration of
9  the fact that he has the assault arising out of it and he has
10 the -- basically the felon in possession under the federal
11 court arising out of it, I'm going to again do the same thing:
12 impose the 360 days; I'm going to run, however, 180 of the
13 days concurrent with the assault charge.
14         The time in 01-222 and 01-448 are going to be
15 revoked in the entirety; that's an additional 480 days.  I see
16 absolutely no basis not to.  These are two DWI sentences that
17 he was given on April 13th.  He didn't even make it six months
18 before he did the exact same thing again, so I see no point in
19 saying that that time should continue to be suspended.  For
20 that reason, whatever it comes out to entirely is what his
21 sentence is.
22         Just as a note as to the *Wertz (ph)* case, people -- many
23 people commit a DWI and nobody gets hurt.  They in fact do a
24 lighter sentence than people who commit a DWI for which
25 somebody gets hurt.  Mr. Wertz, in fact, didn't manage to do

Exhibit C
Page 9 of 12
Gaylene's Word Services
(907) 338-3936
50

1  the damage that Mr. Lewis did; therefore, just the same as
2  people that commit one charge and there isn't much effect from
3  it, much damage done, they do do a lesser sentence, and I
4  think that's the explanation.  Mr. Lewis, for whatever reason,
5  was simply more successful than Mr. Wertz, and his very
6  success is what has got him a longer sentence.  Had he not
7  been so good at firing the weapon at the pipeline and it only
8  dinged it and no oil had come out, which is basically what
9  happened with Mr. Wertz and his dynamite, he too would
10 probably be looking at a lighter sentence.  Had he used a
11 smaller gun, perhaps he could've done the same thing that day.
12 He could've been out trying to shoot at the pipeline and
13 causing no real damage, and he wouldn't be doing as harsh a
14 sentence.  He's the one that decided to shoot point-blank at
15 the pipeline with a weapon big enough to do damage.  That was
16 a choice he made.
17          Mr. Hazelwood, again, keep in mind he was only
18 convicted of a misdemeanor, had no prior record, I don't think
19 I can equate the sentence of Mr. Hazelwood to the sentence of
20 Mr. Lewis.  Unfortunately, at some point in time one's past
21 record comes back to haunt you, and that's what really has
22 finally happened.
23          I'd just like to say, though, for the benefit of the
24 rest of the Lewis family, I don't think the attorneys meant to
25 imply that everybody in the Lewis family is in this boat and,

Exhibit C
Page 10 of 12

1  therefore, somehow Danny Lewis deserves a break.  There are
2  some members of the Lewis family who are in this position.
3  There are, however, members of the Lewis family who are not in
4  this position.  And the brother who came, who actually owned
5  the gun Sheldon Otto (ph), did not appear to me to be in the
6  position that Danny Lewis is in.  There was no indication.
7  Larry Lewis, who's written a letter, I don't think there's an
8  indication.  So that I don't think it's fair to malign the
9  entire Lewis family for the actions of some members of the
10 Lewis family, and so I don't want that to go unnoticed because
11 I believe that for those members of the Lewis family who have
12 made the effort to escape the cycle of alcoholism and violence
13 that they grew up with and make positive changes in their
14 lives, that they should be recognized for that, and that the
15 Court shouldn't just leave as if I didn't notice that they
16 kept talking about the whole Lewis family and the whole Lewis
17 family; I don't think that's really a fair statement, and I
18 don't think that anybody really meant to malign those members
19 of the Lewis family that are not before the Court.  And for
20 that reason, I wanted to make that comment.
21         Mr. Daniel Lewis at any given point in time -- and I
22 don't want him to think that I believe that no one can ever
23 change.  At any given point in time, I think Mr. Lewis can
24 decide; he is intelligent; I think he's well-spoken; I think
25 he is capable of doing a lot more with his life than what he

Exhibit C
Page 11 of 12
Gaylene's Word Services
(907) 338-3936
52

1  has done so far.  And at whatever point he gets out of
2  custody, he can prove everybody wrong who thinks that he can't
3  change, and I invite him to do that.  I would not be
4  disappointed to have him turn around and make the improved
5  life that Mr. Robles (ph) actually thinks is possible.  I
6  think that I will of course ask that they provide him with
7  substance abuse counseling while he's in custody, and
8  hopefully he will avail himself of as much of that as he can
9  get.
10             When he gets out, nobody makes him go back to the
11 homestead and the alcoholism and the violence.  When he gets
12 out, in fact, he probably is not allowed to be around other
13 felons, and therefore he can certainly have the opportunity to
14 go make something else of his life if he wishes to do so.  But
15 that doesn't mean that I can make a finding at this time that
16 it would be safe to release Mr. Lewis and not have him re-
17 offend, because at this point in time, on his record, there
18 certainly is every indication that isolation, not
19 rehabilitation, is what the Court needs to be concerned with,
20 and that is what I have.
21             As far as the conditions of probation, I believe
22 that the nonconsensual search for alcohol and/or drugs,
23 because the use of either of those would increase Mr. Lewis's
24 chance of reoffending and his dangerousness, and I that that's
25 the basis for ordering that as well.  Obviously, they can

Exhibit C
Page 12 of 12

*Gaylene's Word Services*
*(907) 338-3936*

53